[L.A. No. 28134. In Bank. Feb. 8, 1965.]

WILLIAM A. BROWN, JR., et al., Plaintiffs and Appellants, v. GREGORY PETER CONNOLLY et al., Defendants and Respondents.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

392

Beilenson, Meyer, Rosenfeld & Susman, Peter R. Cohen, Sidney M. Wolinsky and Allen E. Susman for Plaintiffs and Appellants.

Clausen & Gilliland, Richard M. Gilliland and Henry E. Kappler for Defendants and Respondents.

MOSK, J.—Victor Brown, plaintiff and appellant, is a minor child[1] who while riding his bicycle was struck by a car driven by Gregory Peter Connolly, defendant and respondent. The accident occurred in May 1957 when plaintiff was 6 years old. Two trials have been held in this case. The first resulted in a judgment for defendant, but it was reversed on appeal on the ground of incorrect instructions. (*Brown* v. *Connolly* (1962) 206 Cal.App.2d 582 [24 Cal.Rptr. 57].) The second trial also resulted in a judgment for defendant.

This appeal is concerned with possible contributory negligence of the minor plaintiff and his failure to testify due to an alleged loss of memory resulting from the accident. Under ordinary circumstances if a party cannot testify because of amnesia induced by injuries suffered in the accident involved in the litigation, he is entitled to a presumption that he acted with due care. (*Scott* v. *Burke* (1952) 39 Cal.2d 388 [247 P.2d 313]; *Powley* v. *Appleby* (1957) 155 Cal. App.2d 727 [318 P.2d 712]; *De Yo* v. *Umina* (1953) 121 Cal. App.2d 505 [263 P.2d 623].) This presumption heretofore has arisen either where the party testified as to his own loss

---

[1]The minor's parents are also parties to the action, but for convenience the minor is treated as being the sole plaintiff and appellant.

Similarly, defendant driver is treated as the sole defendant and respondent.

of memory (see *Scott* v. *Burke, supra*) or was physically as well as mentally unable to testify (see *Larsen* v. *Atchison, T. & S. F. Ry. Co.* (1959) 176 Cal.App.2d 21 [1 Cal.Rptr. 36].) Plaintiff here did not take the stand, even though physically able, for reasons that will appear later. Instead, he attempted to establish the fact of his amnesia through the testimony of a psychiatrist. The court sustained an objection to the psychiatrist's testimony and ultimately refused to give a jury instruction on the presumption of due care as requested by plaintiff. Plaintiff further requested an instruction that he was entitled to a presumption of due care solely by reason of his minority. That instruction was also refused.

We first consider whether a minor is entitled to a presumption of due care solely by virtue of his minority.

In asserting the affirmative of that proposition, plaintiff relies upon the cases of *Van Der Most* v. *Workman* (1951) 107 Cal.App.2d 274 [236 P.2d 842], *McKay* v. *Hedger* (1934) 139 Cal.App. 266 [34 P.2d 221], and *Barrett* v. *Harman* (1931) 115 Cal.App. 283 [1 P.2d 458]. While these cases all involved a minor plaintiff and a defense of contributory negligence and revolved around section 1963, subdivision 4, of the Code of Civil Procedure which provides for a disputable presumption ''That a person takes ordinary care of his own concerns,'' they are not helpful authority to us here. ■ Unquestionably the code section applies to minors as well as to adults. ■ A debatable advantage is afforded children of tender years in that their standard of care is to be tested against other children of the same age and not against adults, but the presumption of due care remains disputable and may be controverted by other evidence.

There is no convincing authority in California or in any jurisdiction holding that a minor is entitled to a presumption of due care solely by virtue of age. The thrust of the discussion in most foreign cases tends, in fact, to indicate an attitude that young children generally do *not* act in due regard for their own safety.[2] Yet courts have not let this considera-

---

[2]''Children are capricious, they act heedlessly without giving the slightest warning of their intentions. They dart here and there with the exuberance of youth.'' (*Frank* v. *Cohen* (1927) 288 Pa. 221, 225 [135 A. 624]; see also *Webster* v. *Luckow* (1935) 219 Iowa 1048 [258 N.W. 685]; *Dennehy* v. *Jordan Marsh Co.* (1947) 321 Mass. 78 [71 N.E.2d 758]; *Dillman* v. *Mitchell* (1953) 13 N.J. 412 [99 A.2d 809]; *Tucker* v. *New York Cent. & H.R.R. Co.* (1891) 124 N.Y. 308 [26 N.E. 916, 21 Am.St.Rep. 670]; *Boykin* v. *Atlantic Coast Line R. Co.* (1937) 211 N.C. 113 [189 S.E. 177]; *Dallas Ry. & Terminal Co.* v. *Rogers* (1949) 147 Tex. 617 [218 S.W.2d 456]; and *Morris* v. *Peyton* (1927) 148 Va. 812 [139 S.E. 500].)

tion result in more stringent standards of care for children.
■ The imposition of liability for contributory negligence of children is not avoided by means of a due care presumption; it is determined by a bifurcated test which requires a finding that the particular child had the capacity to act negligently and then tests the child's conduct by the standards of children of like age and maturity. This methodology protects children from unreasonably lofty liability standards while holding them liable when the facts justify it, and avoids the unsupportable conclusion that young children generally act with due regard for their own safety.

The particular means of application vary from state to state. The California rule is similar to the general pattern while avoiding the arbitrary chronological age limits used in many states. ■ In California the age of capacity is a factual question to be determined by the mentality and maturity of the particular child. ■ The standard of care applied to children found to have capacity for negligent acts is that of children of like age, mental capacity, and discretion. (*Cahill* v. *E. B. & A. L. Stone Co.* (1914) 167 Cal. 126 [138 P. 712]; *Todd* v. *Orcutt* (1919) 42 Cal.App. 687 [183 P. 963]; and *Barrett* v. *Harman* (1931) *supra,* 115 Cal.App. 283.)

■ The California rule appears to be reasonable and workable. ■ The presumption of due care requested by plaintiff in the instant case is available to a child charged with contributory negligence under the same circumstances as apply to adults, but not because he is a child. (*Van Der Most* v. *Workman* (1951) *supra,* 107 Cal.App.2d 274, and *Barrett* v. *Harman* (1931) *supra,* 115 Cal.App. 283.) There appears to be no necessity to create a new application of the presumption of due care solely because of the minority of the individual, since present rules protect against charging minors with a standard of care they cannot meet. ■ We hold, therefore, that no presumption of due care arose solely by virtue of the plaintiff's minority.

This, then, brings us to the problem of amnesia.

■ The presumption of section 1963, subdivision 4, has been limited to certain types of situations. The basic rule is that once a person takes the stand to explain his conduct immediately prior to or at the time in question, he is no longer entitled to the presumption. (*Laird* v. *T. W. Mather, Inc.* (1958) 51 Cal.2d 210, 221 [331 P.2d 617].) The two areas in which the presumption is now allowed are actions for wrong-

ful death (*Anthony* v. *Hobbie* (1945) 25 Cal.2d 814 [155 P.2d 826]; *Westberg* v. *Willde* (1939) 14 Cal.2d 360 [94 P.2d 590]; McBaine, Cal. Evidence Manual (2d ed. 1960) § 1291, pp. 472-475; Witkin, Cal. Evidence (1958) §§ 65-67, pp. 84-86) and those cases where by reason of brain injury the party suffers from retrograde amnesia and cannot remember and testify concerning his conduct at and immediately before the accident (*Scott* v. *Burke* (1952) *supra,* 39 Cal.2d 388; *Kumelauskas* v. *Cozzi* (1959) 173 Cal.App.2d 541 [343 P.2d 605]; McBaine, Cal. Evidence Manual, *supra*; Witkin, Cal. Evidence, *supra*).

A requirement for invocation of the presumption in amnesia cases is that the loss of memory was induced by brain injury suffered as a result of the accident in question. (*Kumelauskas* v. *Cozzi* (1959) *supra,* 173 Cal.App.2d 541, 544, and cases cited.) It has further been held that the amnesia must be genuine and that this is a question for the trier of fact to determine. (*Scott* v. *Burke* (1952) *supra,* at p. 393; *Hensley* v. *Harris* (1957) 151 Cal.App.2d 821, 825 [312 P.2d 414].)

Plaintiff appears to have met the foregoing requirements, and would unquestionably have been entitled to the benefits of the presumption, except for one complicating factor: he was not called to the stand to testify as to his own loss of memory. Plaintiff offered to prove his amnesia through the testimony of a psychiatrist who had examined him. The proposed testimony of the medical doctor was not permitted by the court upon objection of defendant. The court insisted that before an expert witness could testify as to his opinion about the loss of memory, a proper foundation must be laid for the expert testimony, and that the foundation would best be provided by the testimony of the plaintiff unless he was physically unable to take the stand. Since the plaintiff was physically able to take the stand, the court would not permit the expert opinion testimony.

Plaintiff has analogized his plight to situations in which medical testimony was introduced to establish that a party's physical condition made it impossible or extremely hazardous for him to testify. (*Larsen* v. *Atchison, T. & S.F. Ry. Co.* (1959) *supra,* 176 Cal.App.2d 21; *Hughes* v. *City & County of San Francisco* (1958) 158 Cal.App.2d 419 [322 P.2d 623]; *Ray* v. *Henderson* (1963) 212 Cal.App.2d 192 [27 Cal.Rptr. 847].) Plaintiff contends that he suffered a mental disability equivalent to a physical disability which would excuse him.

All the cases relied upon by plaintiff involve factual situa-

tions in which the party not testifying was either mentally or physically so disabled as to prevent his appearance on the stand. No contention has been made that plaintiff is physically unable to testify. His body could have been produced. He does claim that his mental disability is one step removed from the usual amnesia, that on certain occasions he will say he cannot remember anything about the accident, but that on other occasions he will relate a version of the accident. His versions of the accident are seldom the same and are allegedly the product of fantasy. Thus, if called to the stand, plaintiff may or may not testify as to loss of memory, or he may purport to relate a version of the accident. In the latter circumstance his counsel would neither be able to vouch for plaintiff's testimony, nor could he demonstrate to the jury how the plaintiff's tale differs from time to time without in effect impeaching his own witness. As an escape from this dilemma the testimony of the psychiatrist was offered. Whereas if the minor were produced the jury would have been asked to judge on the basis of a single narration whether the story that he might tell is a real or fanciful recollection of events, here counsel proposed to use an expert who had listened to the child on numerous occasions and has had an opportunity to hear and compare different related versions of the event.

The predicament of a party wishing to have the benefit of the presumption but understandably not desiring to testify as to his own loss of memory is balanced against the normal difficulty courts experience to detect cases of less than genuine amnesia. Undoubtedly the prevailing rules have a salutary effect in preventing those merely feigning amnesia from using the presumption of due care as a means of avoiding weak testimony and submitting to revealing cross-examination. Generally the best antidote for a malingerer is the scrutiny of an alert jury.

On the other hand, the compulsory testimony rule invoked here is unreasonably inflexible. An iron curtain has been created between physical incapacity to testify and mental incapacity, expert medical testimony as to the former being allowed, while medical testimony as to the latter is not, unless the mental incapacity has required institutionalization of the party. (See *Larsen* v. *Atchison, T. & S.F. Ry. Co.* (1959) *supra,* 176 Cal.App.2d 21.)

We cannot approve this arbitrary rule.　　　 The procedure here required by the trial court provides less assurance

of ascertainment of the truth than does the testimony of a competent medical expert, for the party opposing the due care presumption may (a) cross-examine the expert witness, and the jury may choose to reject the expert's evidence as to loss of memory; (b) produce contrary medical testimony; and (c) if he wishes, compel the party claiming amnesia to testify as an adverse witness under section 2055 of the Code of Civil Procedure and not be bound by his testimony.

No persuasive reason has been suggested as to why the testimony of a qualified psychiatrist would not be adequate proof that a person incurred an injury as a result of an accident which has caused him to suffer from a loss of memory of the facts before and during the occurrence of the accident. This is a subject peculiarly within the ken of a psychiatrist, and particularly under the circumstances of this case the expert's testimony would appear to be more reliable than that of the minor plaintiff. Courts have recognized experts' reliability in cases involving physical disability, such as *Ray* v. *Henderson* (1963) *supra,* 212 Cal.App.2d 192, where a physician testified that a witness would probably suffer an additional heart seizure if he took the stand. Here, as there, the jury would understandably have more confidence in the expert than in the patient on a medical issue.

There has been an increasing albeit tardy willingness of courts to consider uncommon mental and psychological problems as medical phenomena and thus appropriate subjects for expert testimony. (See, e.g., Prosser on Torts (2d ed. 1955), pp. 38-40 and 176-180.) The court-adopted rule that a person must testify as to his own loss of memory in order to be entitled to a presumption of due care should be another casualty of this trend. No increased danger of fraud upon the courts will result which is not outweighed by the decreased ability of a party who remains silent to convince the jury of the validity of his claim.

The trial court erred in excluding psychiatric testimony and in failing to give an appropriate instruction on loss of memory and the presumption of ordinary care. The errors compel a reversal and a new trial.

The judgment is reversed.

Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

TRAYNOR, C. J., Concurring.—I adhere to the views set forth in my dissenting opinions in *Speck* v. *Sarver,* 20 Cal.2d

585, 590 [128 P.2d 16], and *Scott* v. *Burke,* 39 Cal.2d 388, 402 [247 P.2d 313], that presumptions are not evidence and that a presumption should not be invoked against the party who already has the burden of proving that the presumed fact does not exist. I concur in the judgment under the compulsion of those cases, however, for they are the law of this state until they are overruled or changed by statute.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal, which reads, as follows:

"This is an appeal[1] by plaintiffs, Victor Brown, a minor, and his parents, William A. Brown, Jr., and Enolla Brown, from a 'Judgment on Verdict in Open Court' entered in favor of defendants in an action for personal injuries suffered by Victor Brown arising out of a collision between an automobile driven by defendant Connolly and a bicycle ridden by plaintiff Victor Brown.

"Plaintiffs' contentions on this appeal relate to whether the trial court erred 'in refusing to give plaintiffs' requested instruction affording to the infant Victor the presumption of due care in his own behalf and in refusing to allow plaintiffs, through an expert witness, to give an explanation to the jury of plaintiff Victor's failure to testify.'

"There is no question with reference to the sufficiency of the evidence to support the judgment. While there were some minor discrepancies in the evidence at the two trials, the opinion of Mr. Justice Fox in the first appeal of this case (*Brown* v. *Connolly,* 206 Cal.App.2d 582 [24 Cal.Rptr. 57]), succinctly and accurately sets forth the basic facts relating to the occurence of the accident, and the statement therein contained is hereby expressly incorporated by reference herein. The facts which are particularly relevant and material to the various contentions presently made by plaintiffs will be set forth under the respective contentions.

"Plaintiffs' first contention is that the trial court erred in refusing to instruct the jury that the minor plaintiff was presumed to have exercised due care in his own behalf. Plain-

"[1]This is the second appeal from a judgment in favor of defendants. The case was originally tried before a jury. The cause was reversed on appeal solely upon the ground that an erroneous instruction had been given by the trial court. (*Brown* v. *Connolly,* 206 Cal.App.2d 582 [24 Cal.Rptr. 57].)"

tiffs' proferred instruction is set forth in the footnote.[2]  Two
arguments in support of this contention are advanced:

*"First, that the mere fact of minority insulates a minor
plaintiff with the presumption of due care where the defense
of contributory negligence is asserted against the minor.*

"In support of this position plaintiffs cite and rely upon
the cases of *Barrett* v. *Harman,* 115 Cal.App. 283 [1 P.2d 458];
*Van Der Most* v. *Workman,* 107 Cal.App.2d 274 [236 P.2d
842]; and *McKay* v. *Hedger,* 139 Cal.App. 266 [34 P.2d 221].
The *Barrett* case, which is cited in both the *Van Der Most* case
and *McKay* case, does not represent the correct rule.  In
*Barrett,* the infant plaintiff, age 11, testified that he crossed
the street in a crosswalk.  The defense attempted to impeach
him.  A verdict was rendered in favor of plaintiff and the
defense asserted on the appeal that the evidence showed con-
tributory negligence as a matter of law.  In affirming, the court
stated that the 'presumption is that the child was at all times
exercising due care for its own safety (Code Civ. Proc. § 1963,
subd. 4).'  (P. 286.)

"Code of Civil Procedure, section 1963, subdivision 4, is no
authority for singling out a child, as distinguished from an
adult or any other person, insofar as this particular presump-
tion is concerned.  This section merely provides that 'a person
takes ordinary care of his own concerns,' and does not dis-
tinguish between age groups.  It is now established that an
instruction on due care should not be given when the party
who seeks to invoke it testifies concerning his conduct immedi-
ately prior to or at the time of the accident.  (*Laird* v. *T. W.
Mather, Inc.,* 51 Cal.2d 210 [331 P.2d 617].)

"Recent cases have clearly crystalized the law and it has
been held that the presumption of due care is proper in two
situations: (1) in an action for wrongful death there is a
presumption that the decedent exercised ordinary care for his
own concerns; (*Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d
826]; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; Mc-

"2'The law presumes that Victor Brown in his conduct at the time
of and immediately preceding the accident was exercising ordinary care
and was obeying the law.

" 'This presumption is a form of evidence. It will support a finding
in accord with the presumption where there is no proof to the contrary;
and it will support such a finding in the face of contrary evidence if
your judgment so directs after weighing the conflicting evidence.

" 'When such a conflict exists, it is the jury's duty to weigh the
presumption and any evidence that may support it against the contrary
evidence and to determine which, if either, preponderates. Such delib-
erations, of course, shall be related to and be in accordance with my
instructions on the burden of proof.' ''

Baine, Cal. Evidence Manual [2d ed. 1960] § 1291, pp. 472-475; Witkin, Cal. Evidence (1958) §§ 65-67, pp. 84-86.) (2) where by reason of brain injury the party suffers from retrograde amnesia and cannot remember and testify concerning his conduct at and immediately before the accident. (*Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313]; *Kumelauskas* v. *Cozzi*, 173 Cal.App.2d 541 [343 P.2d 605]; McBaine, Cal. Evidence Manual, *supra*; Witkin, Cal. Evidence, *supra*.) The mere fact of minority does not entitled [*sic*] plaintiff Victor to the benefit of the presumption.

"The *second argument* advanced is that plaintiffs were entitled to the instruction on due care *because plaintiff Victor was prevented from testifying about the circumstances of the accident by reason of a brain injury received in the accident and plaintiffs produced no eyewitnesses' testimony concerning the accident.*

"What is stated in the case of *Coe* v. *Southern Pacific Co.*, 203 Cal.App.2d 509, at page 516 [21 Cal.Rptr. 731], is pertinent with respect to the unusual factual situation presented in the case at bar:

" 'The philosophy which permits the presumption to be considered is, that when the person whose conduct is in question is unable to testify due to death, loss of memory or other circumstances beyond his control, the law provides testimony for him by the presumption of due care. *To allow the use of the presumption where the person merely does not choose to testify would be illogical and contrary to the reasons for its use.* Thus the driver of an automobile involved in an action, who, if he testified would have to admit that he was completely at fault, could merely refrain from testifying and then have the benefit of the presumption that he was not at fault.' (Italics added.)

"The case at bar presents the unusual situation of where the attorney for plaintiffs refused to place the minor plaintiff on the stand. Rather, plaintiffs attempted to lay the foundation for the presumption solely with medical testimony. The reason for this refusal was stated by plaintiffs' attorney as follows:

" 'Mr. Cohen: . . . But I might point out, your Honor, that our whole theory of this case is that it is a presumption case and that Victor is entitled to the presumption.

" 'Now, our problem in calling Victor is, one, at the time of the accident he was only six years old; and, two, as *his*

*deposition shows, he will state at varying times that he either can't recall it or he will make up a story about it.*

*" 'He told in his deposition, I believe, three or four different stories, all conflicting, and he has told me on separate occasions that he can't remember it.*

*" 'Now, under these circumstances it's impossible for us to call the boy because we can't vouch for his testimony, and unless we can lay the foundation for the presumption through the doctor, our main theory of this case is gone.'* (Italics added.)

"The minor plaintiff was available so that it was not impossible for plaintiffs' attorney to call him as a witness. On the contrary, plaintiffs even suggested that defendants call the minor plaintiff as a witness.[3] The case of *Hughes* v. *City & County of San Francisco*, 158 Cal.App.2d 419 [322 P.2d 623], relied upon by plaintiffs is not apposite. In the *Hughes* case it would appear that it was impossible for plaintiff to have testified at the trial. The court stated at page 420 that:

" '. . . Her mental deterioration came on about the time of her second fall and may have been due to her physical condition or her age. She could not appear or testify by deposition at either trial.'

"It was incumbent upon plaintiffs to lay the necessary foundation before they were entitled to the presumption. The trial court did not err.

"In addition to what has already been stated there is another separate reason why plaintiffs were not entitled to have their proffered instruction given. Neither side to the within appeal raised the issue but it is established that the trial court has the right to refuse an instruction, erroneous on its face, without modifying it. (See cases cited 42A West's Cal. Dig., Trial, § 261, pp. 388-393.)

"An instruction on the presumption of due care which was substantially similar to that proffered by plaintiffs was held to be erroneous in *Kumelauskas* v. *Cozzi*, 173 Cal.App.2d 541

---

" [3]The Reporter's Transcript discloses the following in pertinent part:
" 'Mr. Gilliland: We don't have any testimony that the boy doesn't remember it.
" 'Mr. Cohen: Where can the testimony come from? We can't—
" 'Mr. Gilliland: From the boy.
" 'Mr. Cohen: *You put the boy on.*
" 'The Court: If you want the benefit of the presumption, why, of course, you are the one that has to establish the basis of the amnesia.
" 'I am going to sustain the objection.
" 'Mr. Gilliland: Thank you, your Honor.' (Italics added.)"

[343 P.2d 605]. The proper instruction is set forth in 1 B.A.J.I. No. 135-B (New).

"Lastly, plaintiffs assert that 'Irrespective of the Applicability of the Presumption of Due Care, a Party who Does Not Appeal [*sic*] and Testify at the Trial May Introduce Medical Testimony Concerning the Reason for His Non-Appearance.'

"Plaintiffs cite and rely upon the case of *Ray* v. *Henderson*, 212 Cal.App.2d 192 [27 Cal.Rptr. 847]. In the *Ray* case, as in the case at bar, the deposition of the party had been taken prior to the trial. At the trial, the defendant, whose deposition had been taken, did not testify. His physician testified that the defendant was suffering from an inoperable cancer of the stomach, had suffered from a heart attack, and was in such physical condition that, if the defendant were to testify it might produce an acute heart failure or another heart attack which would imperil his life. The deposition of defendant was then read in its entirety. The court concluded that the doctor's testimony with reference to the peril which might be encountered if the defendant took the stand was proper.

"The *Ray* case is in nowise similar to the case at bar. The deposition of plaintiff Victor was never read at the trial. There is nothing in the testimony of either of plaintiffs' expert witnesses which would indicate that the minor plaintiff was unable to testify at the trial. The objection was sustained to the question of whether the psychiatrist had an opinion as to whether Victor could recall the accident and the circumstances preceding it—not to whether Victor was physically able to testify at the trial."